IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEPHANIE FOLEY,

    *Plaintiff,*

v.

    Case No. 23-2402-EFM

RICK KELLENBERGER & FORT SCOTT
FAMILY MEDICINE, P.A.,

    *Defendants.*

**MEMORANDUM AND ORDER**

    Plaintiff Stephanie Foley filed suit against Defendants Dr. Rick Kellenberger and Fort Scott Family Medicine, P.A. ("FSFM") alleging that Defendants engaged in medical malpractice by prescribing her excessive amounts of opioids for many years. Before the Court are two motions, both filed by Defendants. The first is a Motion for Summary Judgment (Doc. 41) in which Defendants assert that Plaintiff's claims are time-barred, that the claims against FSFM are unsupported, and that the punitive damages claim is unsupported. The second is a Motion to Strike Plaintiff's Experts (Doc. 43) arguing that Plaintiff's designated experts are unqualified to testify in this case. For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment and denies the Motion to Strike as moot.

    **I.    Factual and Procedural Background[1]**

    Defendant Kellenberger is a physician licensed to practice medicine in Kansas and Missouri. During the relevant timeframe he practiced medicine at FSFM. Defendant Kellenberger

---

[1] The facts are uncontroverted unless otherwise noted.

and nurse practitioners at FSFM treated Plaintiff between 2010 and March 2023. From at least 2010 through 2023, Defendants prescribed the opioid pain medication morphine to Plaintiff to treat chronic pain in her back, shoulder, and joints, as well as her fibromyalgia diagnosis.

In approximately 2012 or 2013, Plaintiff's morphine was stolen by a family member. Forced to go without her morphine prescription, Plaintiff realized for the first time that she was experiencing physical symptoms from the absence of the opioid medication. These symptoms included creepy crawly legs, restless legs, inability to sleep, vomiting, and diarrhea. Plaintiff did not make Defendants aware of her physical symptoms from the withdrawal of the opioid medication. Off and on over the years, and somewhere less than twenty times, Plaintiff would take a friend's medications when her own medications were unavailable so as not to experience the physical withdrawal symptoms again.

Between 2010 and 2023, Plaintiff's self-care deteriorated. She did not regularly shower or care for her hair. During this same timeframe, Plaintiff experienced mood swings, anxiety, depression, agitation, aggression, and memory loss. She also experienced behavioral changes that included stealing, shoplifting, and dumpster diving. After Plaintiff's family members noticed these changes, they told Plaintiff that she was behaving differently, not getting along with others, and being aggressive. Neither Plaintiff nor Plaintiff's family informed Defendants of these behavioral changes.

Sometime between 2010 and 2018, Plaintiff's daughter applied to have Plaintiff appear on the television show *Intervention*. Plaintiff ultimately rejected the efforts for her to appear on the show because Plaintiff did not want people coming to her home and seeing the way she was. On other occasions, Plaintiff's family talked with Plaintiff one-on-one and as a group to express their concerns with Plaintiff's behavior changes and her medications. Although Plaintiff does not

remember these efforts by her family, she has since been told about them and does not dispute that they occurred.

Throughout her treatment by Defendants, Plaintiff understood that she was physically dependent upon the morphine to maintain her overall state. She did not report any issues with the medication to Defendants. Instead, she lived her life in a way so as not to get her opioid prescription decreased. She feared that if her medication was decreased, she might experience withdrawal effects. In July 2023, Plaintiff entered rehabilitation for her addiction. Throughout the course of her care by Defendants, Plaintiff was never adjudged incompetent or incapable of making her own decisions.

Plaintiff filed this lawsuit on September 12, 2023. She alleges that, as a result of Defendants' negligence, she developed an iatrogenic substance use disorder from which she continues to suffer. Defendants filed both pending motions on December 19, 2024. Timely responses and replies were filed. The matters are now ripe for the Court's ruling.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[4]

---

[2] Fed. R. Civ. P. 56(a).

[3] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The nonmovant must then bring forth specific facts showing a genuine issue for trial.[5] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[6] The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[7]

### III.   Analysis

Defendants move for summary judgment arguing that Plaintiff's claim is barred by the statute of limitations. Defendants assert that Plaintiff was aware of her opioid dependency as early as 2012 and at the latest by 2018. Plaintiff responds that she lived in a "fog" as a result of the medication prescribed by Defendants and that prevented her from reasonably ascertaining the fact of her addiction. The uncontroverted facts demonstrate that Plaintiff's injury—her addiction to opioids—was reasonably ascertainable by 2018.

In Kansas, a plaintiff must file a medical malpractice claim within two years of the act giving rise to the plaintiff's injury.[8] Generally, a medical malpractice action "shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action."[9] But when "the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party."[10] Summary judgement may be proper on the affirmative defense of the statute

---

[5] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

[6] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

[8] K.S.A. 60-513(a)(7).

[9] K.S.A. 60-513(c).

[10] *Id.*

of limitations, however when the evidence is in dispute as to when an injury becomes reasonably ascertainable, the issue is one for the trier of fact.[11]

" 'Reasonably ascertainable' does not mean 'actual knowledge.' "[12] Rather, determining when an injury first was reasonably ascertainable "requires the application of 'an objective standard based upon an examination of the surrounding circumstances.' "[13] And "objective knowledge of the injury, not the extent of the injury, triggers the statute."[14] Courts must distinguish between injuries that are "progressive in nature, without external or visible sign, and latent" from those that are "manifest or acute."[15]

The type of injury that Plaintiff asserts—opioid addiction—is a manifest injury. There were external and visible signs between 2010 and 2018 that Plaintiff was addicted to opioids. It is uncontroverted that Plaintiff experienced withdrawal symptoms in 2012, her self-care deteriorated, and her family members expressed their concern to Plaintiff about her behavior changes and her medication use. These are external, visible signs that indicate that Plaintiff's addiction was a manifest—and not latent—injury.

Plaintiff's clouded state of mind does not alter the fact that her injury was reasonably ascertainable as she knew of her addition at least by 2018. Plaintiff asserts that she was in a fog because of the medication, and that this fog prevented her from fully comprehending her addiction. But the uncontroverted facts demonstrate that Plaintiff understood that she was addicted to opioids

---

[11] *Hecht v. First Nat'l Bank & Tr. Co.*, 208 Kan. 84, 490 P.2d 649, 656 (1971).

[12] *Davidson v. Denning,* 259 Kan. 659, 914 P.2d 936, 948 (1996).

[13] *Berndt v. Kramer*, 249 Fed. App'x 45, 49 (10th Cir. 2007) (quoting *P.W.P. v. L.S. & Johnson Cnty. Mental Health Ctr.*, 266 Kan. 417, 969 P.2d 896, 902 (1998).

[14] *P.W.P.*, 969 P.2d at 902.

[15] *Id.* (quoting *Seymour v. Lofgreen*, 209 Kan. 72, 495 P.2d 969, 975 (1972)) (internal quotation marks omitted).

by 2018. Plaintiff testified that she knew that she was physically dependent upon the morphine between 2010 and 2018. Further, Plaintiff testified that she lived her life in a way to prevent her prescription being reduced by Defendants. Plaintiff's contention about living in a fog is similar to the contention made by the plaintiff in *Seymour v. Lofgreen*.[16] There, the Kansas Supreme Court determined that a plaintiff's inability to ascertain her injury because of her mental illness did not render plaintiff's injury unascertainable for purpose of the statute of limitations.[17] Likewise, here, Plaintiff's assertion that the medication clouded her mind—preventing her from grasping the extent of her injury—does not change the fact that her addiction was manifest and that she had objective knowledge of it. Because the test as to whether an injury is reasonably ascertainable is an objective one, Plaintiff's subjective contentions about the state of her mind do not present a genuine dispute as to a material fact. Accordingly, the Court finds that Plaintiff's opioid addiction was reasonably ascertainable in 2018. Consequently, Plaintiff's claims are barred by the statute of limitations because she did not file this suit until 2023, more than two years after her opioid addiction was reasonably ascertainable.

Plaintiff's vicarious and corporate liability claims against FSFM are premised upon the same injury—Plaintiff's opioid dependence. As such, for the same reasons Plaintiff's claims against Defendant Kellenberger are time-barred, her vicarious and corporate liability claims against FSFM are also time-barred. Plaintiff's claim for punitive damages against all Defendants is also based upon her opioid addiction and thus, for the same reasons stated above, is time-barred. Accordingly, the Court grants summary judgment in Defendants' favor on Plaintiff's vicarious

---

[16] 495 P.2d 969. Although some portions of the *Seymour* decision no longer apply because of a statutory change it still "provides persuasive, if not binding, authority for the conclusion that . . . an objective standard [is required] to determine whether the fact of injury is reasonably ascertainable." *Martin v. Naik*, 297 Kan. 241, 300 P.3d 625, 637 (2013).

[17] *Seymour*, 495 P.2d at 975.

liability, corporate liability, and punitive damages claims. Finally, because the Court grants summary judgment in Defendants' favor, Defendants' Motion to Strike Plaintiff's Experts is moot.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 41) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiff's Experts (Doc. 43) is **DENIED** as **MOOT**.

**IT IS SO ORDERED**.

This case is closed.

Dated this 6th day of May, 2025.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE